IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-1691 |
| | ) | |
| ALCOA CORPORATION AND | ) | |
| CITY OF EAST ST. LOUIS, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**OU 2 REMEDIAL DESIGN/REMEDIAL ACTION CONSENT DECREE
NORTH ALCOA SUPERFUND ALTERNATIVE SITE – OPERABLE UNIT 2**

## TABLE OF CONTENTS

I. BACKGROUND ...................................................................................................1
II. JURISDICTION ..................................................................................................4
III. PARTIES BOUND ..............................................................................................4
IV. DEFINITIONS.....................................................................................................5
V. GENERAL PROVISIONS .................................................................................12
VI. PERFORMANCE OF THE WORK ..................................................................13
VII. PROPERTY REQUIREMENTS .......................................................................19
VIII. FINANCIAL ASSURANCE .............................................................................24
IX. PAYMENTS FOR RESPONSE COSTS...........................................................29
X. INDEMNIFICATION AND INSURANCE .......................................................32
XI. FORCE MAJEURE ...........................................................................................34
XII. DISPUTE RESOLUTION.................................................................................37
XIII. STIPULATED PENALTIES .............................................................................41
XIV. COVENANTS BY PLAINTIFF........................................................................45
XV. COVENANTS BY SETTLING PARTIES ........................................................49
XVI. EFFECT OF SETTLEMENT; CONTRIBUTION ............................................53
XVII. ACCESS TO INFORMATION .........................................................................54
XVIII. RETENTION OF RECORDS............................................................................57
XIX. NOTICES AND SUBMISSIONS.....................................................................58
XX. RETENTION OF JURISDICTION ...................................................................60
XXI. APPENDICES ...................................................................................................60
XXII. MODIFICATION ..............................................................................................61
XXIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .................................61
XXIV. SIGNATORIES/SERVICE................................................................................62
XXV. FINAL JUDGMENT .........................................................................................62

# I.  BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.      The United States in its complaint seeks, *inter alia:* (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the North Alcoa Superfund Alternative Site, in East St. Louis, Illinois, together with accrued interest; and (2) performance of response actions by the Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Illinois (the "State") on August 5, 2020, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the Remedial Design and Remedial Action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of the Interior, the Illinois Environmental Protection Agency, and the Illinois Department of Natural Resources on August 5, 2020 of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The Defendants and Howmet Aerospace Inc. that have entered into this Consent Decree ("Settling Parties") do not admit any liability, including joint and several liability for

construction of the Remedial Action, to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.     In response to a release or a substantial threat of a release of a hazardous substances at or from the Site, Alcoa Inc. and the City of East Saint Louis, Illinois ("the City") commenced on December 31, 2002, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430. In 2016, Alcoa Inc. spun off part of its business, including its liabilities in the East St. Louis area, into a new company called Alcoa Corporation ("Alcoa"). The remaining part of Alcoa Inc. became Arconic Inc. and then Howmet Aerospace Inc. ("Howmet").

G.     Defendants Alcoa and the City submitted a Focused Feasibility Study ("FFS") Report for Operable Unit 1 ("OU 1") on April 9, 2012, which EPA approved on April 11, 2012 that included relevant OU 1 information from the Site-wide Draft Revised Remedial Investigation ("RI") Report submitted on March 17, 2009. Alcoa and the City submitted a Focused Feasibility Study ("FFS") Report for Operable Unit 2 ("OU 2") on June 28, 2019, which EPA approved on August 19, 2019 that included relevant OU 2 information from the Site-wide Draft Revised Remedial Investigation ("RI") Report submitted in March 2009.

H.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the OU 2 FFS and of the OU 2 proposed plan for Remedial Action in December 2019, in a major local newspaper of general circulation. EPA provided a 30-day opportunity for written and oral comments from the public on the proposed plan for Remedial Action, from December 2, 2019 to January 5, 2020. EPA held a public meeting on December 12,

2019 to present the Proposed Plan to community members. In response to community requests, EPA extended the public comment period by 60 days, to March 5, 2020. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Superfund & Emergency Management Division Director, EPA Region 5, based the selection of the response action.

I.      The decision by EPA on the OU 2 Remedial Action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on June 26, 2020, on which the State has given its concurrence. The OU 2 ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b). The OU 2 remedy consists of an excavation of waste within OU 2 and consolidation within OU 1, with construction of a cover over waste remaining within the OU 2 area and within the OU 1 area where the OU 2 wastes have been consolidated.

J.      During development of the Proposed Plan for the remainder of the Site, EPA determined that the Site's groundwater RI/FS required additional investigations and study. Prior to issuing the Proposed Plan for the Site's remaining surficial soil and groundwater contamination, EPA established an Operable Unit 3 ("OU 3") that will address contamination of Site-wide groundwater. The OU 2 remedy, and this Consent Decree, does not address OU 3.

K.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Parties if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the OU 2 ROD and the Work to be performed by the Settling Parties shall constitute a response action taken or ordered by the President for which judicial review shall be

3

limited to the administrative record.

M.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the remediation of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Parties. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Parties waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Parties shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.     This Consent Decree is binding upon the United States and upon Settling Parties and their successors and assigns. Any change in ownership or corporate status of a Settling Party including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Party's responsibilities under this Consent Decree.

3.     Settling Parties shall provide a copy of this Consent Decree to each contractor hired to perform the Work and to each person representing any Settling Party with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of

the Work in conformity with the terms of this Consent Decree. Settling Parties or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Parties shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Parties within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.    DEFINITIONS

4.    Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"Affected Property" shall mean all real property at the Site and any other real property where EPA determines, at any time, that access, land, water, or other resource use restrictions, and/or Institutional Controls are needed to implement the Remedial Action, including, but not limited to, the properties shown in Investigative Block 5a and the other Individual Property Owners identified in the Site Map attached as Appendix C.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXI). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"Defendants" shall mean the City of East Saint Louis, Illinois and Alcoa Corporation.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to ¶ 11 (Emergencies and Releases), ¶ 12 (Community Involvement) (including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C.

6

§ 9617(e)), ¶ 15 (Periodic Review), ¶ 28 (Access to Financial Assurance), Section VII (Property Requirements) (including the cost of attorney time and any monies paid to secure or enforce access or land, water, or other resource use restrictions and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XII (Dispute Resolution), and all litigation costs. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Parties have agreed to pay under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from April 1, 2020 to the Effective Date.

"Illinois EPA" shall mean the Illinois Environmental Protection Agency and any successor departments or agencies of the State.

"Institutional Controls" or "ICs" shall mean Proprietary Controls; the Illinois Uniform Environmental Covenant Act, 765 ILCS 122/1-15 ("UECA") covenants; and other state or local laws, regulations, ordinances, zoning restrictions; or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the OU 2 ROD, prepared in accordance with the Statement of Work ("SOW").

"Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site between April 1, 2020 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at

https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"North Alcoa Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3), and the Administrative Order on Consent for Remedial Investigation/Feasibility Study, in the matter of the North Alcoa Site, dated December 31, 2002.

"Operable Unit 1" or "OU 1" shall mean that portion within the North Alcoa Superfund Alternative Site, addressing surface contamination and on-site stormwater encompassing approximately 220 acres, as depicted generally within the black boundary line on the map attached as Appendix C.

8

"Operable Unit 2" or "OU 2" shall mean that portion of soil contamination within the North Alcoa Superfund Alternative Site, addressing surface contamination and on-site stormwater, encompassing approximately 180 acres within the overall North Alcoa Site's approximately 400 acres, depicted generally within the red boundary line on the map attached as Appendix C. OU 2 generally includes properties on the outer edge of the Site, surrounding OU 1 in a horseshoe-like shape, and excluding Site groundwater. OU 2 will be more precisely described in the approved as-built drawings submitted pursuant to ¶ 3.11(b) (RA Completion Report) of the SOW.

"Operable Unit 3" or "OU 3" shall mean that portion within the North Alcoa Superfund Alternative Site, where EPA intends to address groundwater contamination.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the Remedial Action, as specified in the SOW or any EPA-approved O&M Plan.

"Owner Settling Defendant" shall mean the City of East Saint Louis, Illinois.

"Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Parties.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through March 31, 2020, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the OU 2 ROD.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to UECA, common law, or other statutory law by an instrument that is recorded in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"OU 2 Record of Decision" or "OU 2 ROD" shall mean the EPA Record of Decision relating to OU 2 and all attachments thereto. The Superfund & Emergency Management Division Director, EPA Region 5, signed the OU 2 ROD on June 26, 2020. EPA Region 5 has clarified the OU 2 ROD in three memoranda to the file that are incorporated and included herein. The OU 2 ROD is attached as Appendix A.

"Remedial Action" or "RA" shall mean the remedial action selected in the OU 2 ROD.

"Remedial Design" or "RD" shall mean those activities to be undertaken by Settling Parties to develop final plans and specifications for the Remedial Action as stated in the SOW.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Parties" shall mean Defendants and Howmet Aerospace Inc.

"Site" shall mean the North Alcoa Superfund Alternative Site, which includes a facility defined in CERCLA Section 101(9), 42 U.S.C. § 9601(9), encompassing approximately 400 acres, generally bounded on the north by Louisiana Blvd./Lake Drive,

on the east by the Alton and Southern Railway, on the south by Missouri Avenue and on the west by 29th Street, in the southeastern portion of the City of East St. Louis, St. Clair County, Illinois, and generally depicted by the solid red boundary line on the map attached as Appendix C.

"State" shall mean the State of Illinois.

"Statement of Work" or "SOW" shall mean the document describing the activities Settling Parties must perform to implement the RD, the RA, and O&M regarding OU 2, which is attached as Appendix B.

"Supervising Contractor" shall mean the principal contractor retained by Settling Parties to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27); (4) any "hazardous waste" under 35 Ill. Adm. Code 721 and any "waste" under 35 Ill. Adm. Code 807.

"Work" shall mean all activities and obligations Settling Parties are required to perform under this Consent Decree, except the activities required under Section XVIII (Retention of Records).

## V.       GENERAL PROVISIONS

5.       <u>Objectives of the Parties</u>. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Parties, to pay response costs of the Plaintiff, and to resolve the claims of Plaintiff against the Settling Parties as provided in this Consent Decree.

6.       <u>Commitments by Settling Parties</u>.

a.       Settling Parties shall finance and perform the Work in accordance with this Consent Decree and all deliverables developed by Settling Parties and approved or modified by EPA pursuant to this Consent Decree. Settling Parties shall pay the United States for its response costs as provided in this Consent Decree.

b.       Settling Parties obligations to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several. In the event of the insolvency of any Settling Party or the failure by any Settling Party to implement any requirement of this Consent Decree, the remaining Settling Parties shall complete all such requirements. Notwithstanding the foregoing, payment of future response cost obligations is set forth in ¶ 32, below.

7.       <u>Compliance With Applicable Law</u>. Nothing in this Consent Decree limits Settling Parties' obligations to comply with the requirements of all applicable federal and state laws and regulations. Settling Parties must also comply with all applicable or relevant and appropriate

requirements of all federal and state environmental laws as set forth in the OU 2 ROD and the

SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be

deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

    8.    <u>Permits</u>.

    a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and

Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work

conducted entirely on-site (i.e., within the areal extent of contamination or in very close

proximity to the contamination and necessary for implementation of the Work). Where

any portion of the Work that is not on-site requires a federal or state permit or approval,

Settling Parties shall submit timely and complete applications and take all other actions

necessary to obtain all such permits or approvals.

    b.    Settling Parties may seek relief under the provisions of Section XI (Force

Majeure) for any delay in the performance of the Work resulting from a failure to obtain,

or a delay in obtaining, any permit or approval referenced in ¶ 8.a and required for the

Work, provided that they have submitted timely and complete applications and taken all

other actions necessary to obtain all such permits or approvals.

    c.    This Consent Decree is not, and shall not be construed to be, a permit

issued pursuant to any federal or state statute or regulation.

## VI.    PERFORMANCE OF THE WORK

9.    <u>Coordination and Supervision</u>.

    a.    Project Coordinators

    (1)    Settling Parties' Project Coordinator must have sufficient technical

expertise to coordinate the Work. Settling Parties' Project Coordinator may not be

an attorney representing any Settling Party in this matter and may not act as the Supervising Contractor. Settling Parties' Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(2)     EPA shall designate and notify the Settling Parties of EPA's Project Coordinator and Alternate Project Coordinator. EPA may designate other representatives, which may include its employees, contractors and/or consultants, to oversee the Work. EPA's Project Coordinator/Alternate Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP. This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to a release or threatened release of Waste Material.

(3)     Settling Parties' Project Coordinators shall meet with EPA's Project Coordinator at least monthly.

b.     Supervising Contractor. Settling Parties' proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with ANSI/ASQC E4-2004, Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use (American National Standard).

c.     Procedures for Disapproval/Notice to Proceed

(1)     Settling Parties shall designate, and notify EPA, within 10 days after the Effective Date, of the name, title, contact information, and qualifications

14

of the Settling Parties' proposed Project Coordinator; and within 60 days after EPA approval of the remedial design for the Settling Parties' Supervising Contractor whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (e.g., experience, capacity, technical expertise) and do not have a conflict of interest with respect to the project.

(2)     EPA shall issue notices of disapproval and/or authorizations to proceed regarding the proposed Project Coordinator and Supervising Contractor, as applicable. If EPA issues a notice of disapproval, Settling Parties shall, within 30 days, submit to EPA a list of supplemental proposed Project Coordinators and/or Supervising Contractors, as applicable, including a description of the qualifications of each. EPA shall issue a notice of disapproval or authorization to proceed regarding each supplemental proposed coordinator and/or contractor. Settling Parties may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify EPA of Settling Parties' selection.

(3)     Settling Parties may change their Project Coordinator and/or Supervising Contractor, as applicable, by following the procedures of ¶¶ 9.c(1) and 9.c(2).

(4)     Notwithstanding the procedures of ¶¶ 9.c(1) through 9.c(2), Settling Parties have proposed, and EPA has authorized Settling Parties to proceed, regarding the following Project Coordinator:

Ronald M. Morosky
Director, Corp. Remediation
Alcoa Corporation
201 Isabella Street
Pittsburgh, PA 15212
Ronald.morosky@alcoa.com
412.585.7502 (mobile)

10.     <u>Performance of Work in Accordance with SOW</u>. Settling Parties shall:

(a) develop the RD; (b) perform the RA; and (c) operate, maintain, and monitor the effectiveness

of the RA; all in accordance with the SOW and all EPA-approved, conditionally-approved, or

modified deliverables as required by the SOW. All deliverables required to be submitted for

approval under the Consent Decree or SOW shall be subject to approval by EPA in accordance

with ¶ 5.6 (Approval of Deliverables) of the SOW.

11.     <u>Emergencies and Releases</u>. Settling Parties shall comply with the emergency and

release response and reporting requirements under ¶ 3.8 (Emergency Response and Reporting) of

the SOW. Subject to Section XIV (Covenants by Plaintiff), nothing in this Consent Decree,

including ¶ 3.8 of the SOW, limits any authority of Plaintiff: (a) to take all appropriate action to

protect human health and the environment or to prevent, abate, respond to, or minimize an actual

or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such

action, or seek an order from the Court, to protect human health and the environment or to

prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at,

or from the Site. If, due to Settling Parties' failure to take appropriate response action under ¶ 3.8

of the SOW, EPA takes such action instead, Settling Parties shall reimburse EPA under Section

IX (Payments for Response Costs) for all costs of the response action.

12.     <u>Community Involvement</u>. If requested by EPA, Settling Parties shall conduct

community involvement activities under EPA's oversight as provided for in, and in accordance

with, Section 2 (Community Involvement) of the SOW. Such activities may include, but are not limited to, designation of a Community Involvement Coordinator and implementation of a technical assistance plan. Costs incurred by the United States under this Section constitute Future Response Costs to be reimbursed under Section IX (Payments for Response Costs).

13.    <u>Modification of SOW or Related Deliverables.</u>

a.    If EPA determines that it is necessary to modify the Work specified in the SOW and/or in deliverables developed under the SOW to achieve and/or maintain the Performance Standards or to carry out and maintain the effectiveness of the RA, and such modification is consistent with the Scope of the Remedy set forth in ¶ 1.3 of the SOW, then EPA may notify Settling Parties of such modification. If Settling Parties object to the modification they may, within 30 days after EPA's notification, seek dispute resolution under Section XII.

b.    The SOW and/or related work plans shall be modified:

(1)    in accordance with the modification issued by EPA; or

(2)    if Settling Parties invoke dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Parties shall implement all Work required by such modification. Settling Parties shall incorporate the modification into the deliverable required under the SOW, as appropriate.

c.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Nothing in this Consent Decree, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW or related deliverable will achieve the Performance Standards.

15.     <u>Periodic Review</u>. Settling Parties shall conduct, in accordance with ¶ 3.12 (Periodic Review Support Plan) of the SOW, studies and investigations to support EPA's reviews under Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and applicable regulations, of whether the RA is protective of human health and the environment.

16.     <u>Settling Parties' Obligation to Perform Further Response Actions</u>. If EPA selects further response actions relating to the OU 2 portion of the Site, EPA may require Settling Parties to perform such further response actions, but only to the extent that the reopener conditions in ¶¶ 62 or 63  (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Parties may invoke the procedures set forth in Section XII (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of ¶¶ 62 or 63 (United States' Pre- and Post-Certification Reservations) are satisfied, (b) EPA's determination that the RA is not protective of human health and the environment, or (c) EPA's selection of the further response actions. Disputes regarding EPA's determination that the RA is not protective or EPA's selection of further response actions shall be resolved pursuant to ¶ 46 (Record Review).

17.     <u>Off-Site Shipment of Waste Material</u>.

a.     Settling Parties may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the

proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

       b.      Settling Parties may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Parties also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Parties shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

18.      Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## VII.   PROPERTY REQUIREMENTS

19.      <u>Agreements Regarding Access and Non-Interference</u>. Settling Parties shall, with respect to any Non-Settling Owner's Affected Property, use best efforts to secure from such Non-Settling Owner an agreement, enforceable by Settling Parties and by Plaintiff, providing that such Non-Settling Owner, and Owner Settling Defendant, with respect to Owner Settling

Defendant's Affected Property, shall: (i) provide Plaintiff and the other Settling Parties, and their representatives, contractors, and subcontractors with access at all reasonable times to such Affected Property to conduct any activity regarding the Consent Decree, including those listed in ¶ 19.a (Access Requirements); and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in ¶ 19.b (Land, Water, or Other Resource Use Restrictions). Settling Parties shall provide a copy of such access and use restriction agreements to EPA.

  a.  **Access Requirements**. The following is a list of activities for which access is required regarding the Affected Property:

    (1)  Monitoring the Work;

    (2)  Verifying any data or information submitted to the United States;

    (3)  Conducting investigations regarding contamination at or near the Site;

    (4)  Obtaining samples;

    (5)  Assessing the need for, planning, or implementing additional response actions at or near the Site;

    (6)  Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;

    (7)  Implementing the Work pursuant to the conditions set forth in ¶ 66 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Parties or their agents, consistent with Section XVII (Access to Information);

(9)     Assessing Settling Parties' compliance with the Consent Decree;

(10)    Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)    Implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

b.      **Land, Water, or Other Resource Use Restrictions**. The following is a list of land, water, or other resource use restrictions applicable to the Affected Property:

(1)     Prohibiting any use or other activities that could potentially interfere with the RA or remedial measures implemented pursuant to the OU 2 ROD, including any excavation or other intrusive activity that could affect the integrity of the soil cover;

(2)     Prohibiting use of contaminated groundwater;

(3)     Prohibiting any use or other activities that could potentially result in exposure to contaminants in subsurface soils and groundwater, including any disturbance of the materials under the soil cover, and any interference with or covering of the permanent markers or delineation posts placed at the boundaries of the soil cover;

(4)     Ensuring that any new structures on the Site will not be constructed in a manner that could interfere with the RA or remedial measures implemented

21

pursuant to the OU 2 ROD by conducting a soil stability analysis to document the compatibility of the OU 2 conditions with any proposed new construction that must be completed and submitted to EPA for its approval prior to any such construction; and

(5) Ensuring that any new structures on the Site will be constructed in a manner that will minimize potential risk of inhalation of contaminants by conducting radon monitoring that must be completed and, if necessary, a radon mitigation system that must be completed to prevent potential exposure to radon by any inhabitants of such new structures.

20. **Best Efforts**. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Parties would use so as to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements, Proprietary Controls, releases, subordinations, modifications, or relocations of prior encumbrances that affect the title to the Affected Property, as applicable. If Settling Parties are unable to accomplish what is required through "best efforts" in a timely manner, they shall notify the United States, and include a description of the steps taken to comply with the requirements. If the United States deems it appropriate, it may assist Settling Parties, or take independent action, in obtaining such access and/or use restrictions, Proprietary Controls, releases, subordinations, modifications, or relocations of prior encumbrances that affect the title to the Affected Property, as applicable. All costs incurred by the United States in providing such assistance or taking such action, including the cost of attorney time and the amount of monetary consideration or just compensation paid,

constitute Future Response Costs to be reimbursed under Section IX (Payments for Response Costs).

21.     <u>Notice to Successors-in-Title</u>.

a.      Owner Settling Defendant shall, within 15 days after the Effective Date, submit for EPA approval a notice to be filed regarding Owner Settling Defendant's Affected Property in the appropriate land records. The notice must: (1) include a proper legal description of the Affected Property; (2) provide notice to all successors-in-title: (i) that the Affected Property is part of, or related to, the Site; (ii) that EPA has selected a remedy for the Site; and (iii) that potentially responsible parties have entered into a Consent Decree requiring implementation of such remedy; and (3) identify the U.S. District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. Owner Settling Defendant shall record the notice within 10 days after EPA's approval of the notice and submit to EPA, within 10 days thereafter, a certified copy of the recorded notice.

b.      Owner Settling Defendant shall, prior to entering into a contract to Transfer Owner Settling Defendant's Affected Property, or 60 days prior to Transferring Owner Settling Defendant's Affected Property, whichever is earlier:

(1)     Notify the proposed transferee that EPA has selected a remedy regarding the Site, that potentially responsible parties have entered into a Consent Decree requiring implementation of such remedy, and that the United States District Court has entered the Consent Decree (identifying the name and civil action number of this case and the date the Consent Decree was entered by the Court); and

(2)     Notify EPA and the State of the name and address of the proposed

transferee and provide EPA and the State with a copy of the notice that it

provided to the proposed transferee.

22.     In the event of any Transfer of the Affected Property, unless the United States

otherwise consents in writing, Settling Parties shall continue to comply with their obligations

under the Consent Decree, including their obligation to secure access and ensure compliance

with any land, water, or other resource use restrictions regarding the Affected Property, and to

implement, maintain, monitor, and report on Institutional Controls.

23.     If EPA determines that Institutional Controls in the form of State or local laws,

regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in

connection with the Site, Settling Parties shall cooperate with EPA's and the State's efforts to

secure and ensure compliance with such governmental controls.

24.     Notwithstanding any provision of the Consent Decree, the United States and the

State retain all of their access authorities and rights, as well as all of their rights to require

Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA,

and any other applicable statute or regulations.

## VIII.   FINANCIAL ASSURANCE

25.     In order to ensure completion of the Work, Settling Parties shall secure financial

assurance, initially in the amount of $4.11 million ("Estimated Cost of the Work"), for the

benefit of EPA. Settling Parties may combine in one financial mechanism the amount of

financial assurance required by this Consent Decree and the amount of financial assurance

maintained for other aspects of the Site, provided that the method of financial assurance meets

the requirements of this paragraph. The financial assurance must be one or more of the

mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA or under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/ and satisfactory to EPA. Settling Parties may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, and/or insurance policies.

      a.     A surety bond guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

      b.     An irrevocable letter of credit, payable to or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

      c.     A trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency; or

      d.     A policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdictions and whose insurance operations are regulated and examined by a federal or state agency.

26.     Settling Parties have selected, and EPA has found satisfactory, a performance bond pursuant to Paragraph 25.a as an initial form of financial assurance. Within 30 days after the Effective Date, Settling Parties shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance

and shall submit such mechanisms and documents to the EPA Regional Financial Management

Officer, to the United States, and to EPA as specified in Section XIX (Notices and Submissions).

27.     Settling Parties shall diligently monitor the adequacy of the financial assurance. If

any Settling Party becomes aware of any information indicating that the financial assurance

provided under this Section is inadequate or otherwise no longer satisfies the requirements of this

Section, such Settling Party shall notify EPA of such information within 7 days. If EPA

determines that the financial assurance provided under this Section is inadequate or otherwise no

longer satisfies the requirements of this Section, EPA will notify the affected Settling Party of

such determination. The affected Settling Party shall, within 30 days after notifying EPA or

receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a

proposal for a revised or alternative financial assurance mechanism that satisfies the

requirements of this Section. EPA may extend this deadline for such time as is reasonably

necessary for the affected Settling Party, in the exercise of due diligence, to secure and submit to

EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 60 days.

Settling Parties shall follow the procedures of ¶ 29 (Modification of Amount, Form, or Terms of

Financial Assurance) in seeking approval of, and submitting documentation for, the revised or

alternative financial assurance mechanism. Settling Parties' inability to secure financial assurance

in accordance with this Section does not excuse performance of any other obligation under this

Settlement.

28.     Access to Financial Assurance.

a.      If EPA issues a notice of implementation of a Work Takeover under ¶ 66, then, in accordance with any applicable financial assurance mechanism, EPA is entitled to: (1) the performance of the Work; and/or (2) require that any funds guaranteed be paid in accordance with ¶ 28.d.

b.      If EPA is notified by the issuer of a financial assurance mechanism that it intends to cancel the mechanism, and the affected Settling Party fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 28.d.

c.      If, upon issuance of a notice of implementation of a Work Takeover under ¶ 66, either: (1) EPA is unable for any reason to promptly secure the resources guaranteed under any applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Parties shall, within 30 days of such demand, pay the amount demanded as directed by EPA.

d.      Any amounts required to be paid under this ¶ 28 shall be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA, the State, or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the EPA Hazardous Substance Superfund or into the North Alcoa Site

27

Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

     e.      All EPA Work Takeover costs not paid under this ¶ 28 must be reimbursed as Future Response Costs under Section IX (Payments for Response Costs).

     29.      <u>Modification of Amount, Form, or Terms of Financial Assurance</u>. Settling Parties may submit, on any anniversary of the Effective Date or at any other time agreed to by the Parties, a request to reduce the amount, or change the form or terms, of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 26, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Parties of its decision to approve or disapprove a requested reduction or change pursuant to this Paragraph. Settling Parties may reduce the amount of the financial assurance mechanism only in accordance with: (a) EPA's approval; or (b) if there is a dispute, the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XII (Dispute Resolution). Settling Parties may change the form or terms of the financial assurance mechanism only in accordance with EPA's approval. Any decision made by EPA on a request submitted under this Paragraph to change the form or terms of a financial assurance mechanism shall not be subject to challenge by Settling Parties pursuant to the dispute resolution provisions of this Consent Decree or in any other forum. Within 30 days after receipt of EPA's approval of, or the agreement or decision resolving a dispute relating to, the requested modifications pursuant to this Paragraph, Settling Parties shall submit to EPA documentation of the reduced, revised, or alternative financial assurance mechanism in accordance with ¶ 26.

30.     <u>Release, Cancellation, or Discontinuation of Financial Assurance</u>. Settling Parties

may release, cancel, or discontinue any financial assurance provided under this Section only:

(a) if EPA issues a Certification of Work Completion under ¶ 3.13 (Certification of Work

Completion) of the SOW; (b) in accordance with EPA's approval of such release, cancellation,

or discontinuation; or (c) if there is a dispute regarding the release, cancellation or

discontinuance of any financial assurance, in accordance with the agreement, final administrative

decision, or final judicial decision resolving such dispute under Section XII (Dispute

Resolution).

## IX.     PAYMENTS FOR RESPONSE COSTS

31.     <u>Payment by Settling Parties for United States Past Response Costs</u>.

      a.      On July 17, 2020, EPA received payment of all Past Response Costs on

behalf of the Settling Parties which satisfies the Settling Parties' obligations for payment

of Past Response Costs.

      b.      The total amount paid by Settling Parties, pursuant to ¶ 31.a, has been

deposited by EPA in the North Alcoa Site Special Account (Site ID: B5J4) to be retained

and used to conduct or finance response actions at or in connection with the Site, or to be

transferred by EPA to the EPA Hazardous Substance Superfund.

32.     <u>Payments by Settling Parties for Future Response Costs</u>. Settling Parties shall pay

to EPA all Future Response Costs not inconsistent with the NCP.

      a.      **Periodic Bills**. On a periodic basis, EPA will send Settling Parties a bill

requiring payment that includes an Itemized Cost Summary and a DOJ case cost

summary, which includes direct and indirect costs incurred by EPA, its contractors,

subcontractors, and DOJ. Settling Parties shall make all payments within 30 days after

Settling Parties' receipt of each bill requiring payment, except as otherwise provided in ¶ 33, at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link, and including references to the Site/Spill ID Number B5J4, the DJ Number 90-11-3-10590/1, and the purpose of the payment. Settling Parties shall send to DOJ and EPA, in accordance with ¶ 89, a notice of this payment including these references.

  b. **Deposit of Future Response Costs Payments**. The total amount to be paid by Settling Parties pursuant to ¶ 32.a shall be deposited by EPA in the North Alcoa Site Special Account (Site ID: B5J4) to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

33. <u>Contesting Future Response Costs</u>. Settling Parties may submit a Notice of Dispute, initiating the procedures of Section XII (Dispute Resolution), regarding any Future Response Costs billed under ¶ 32 (Payments by Settling Parties for Future Response Costs) if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XIX (Notices and Submissions). Such Notice of Dispute shall specifically identify the contested Future Response Costs and the basis for objection. If Settling Parties submit a Notice of Dispute, Settling Parties shall within the 30-day period, also as a requirement for initiating the dispute, (a) pay all uncontested Future Response Costs to the United States, and (b) establish, in a duly chartered bank or trust company,

an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation (FDIC), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Parties shall send to the United States, as provided in Section XIX (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. If the United States prevails in the dispute, Settling Parties shall pay the sums due (with accrued interest) to the United States within 7 days after the resolution of the dispute. If Settling Parties prevail concerning any aspect of the contested costs, Settling Parties shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within 7 days after the resolution of the dispute. Settling Parties shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with ¶ 32.a (instructions for future response cost payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Parties' obligation to reimburse the United States for its Future Response Costs.

34.     Interest. In the event that any payment for Future Response Costs required under this Section is not made by the date required, Settling Parties shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Parties' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff

by virtue of Settling Parties' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIII (Stipulated Penalties).

## X.    INDEMNIFICATION AND INSURANCE

35.    <u>Settling Parties' Indemnification of the United States</u>.

a.    The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Parties as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Parties shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Parties, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Parties as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Parties agree to pay the United States all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Parties, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Parties in carrying out activities pursuant to this Consent Decree.

32

Neither Settling Parties nor any such contractor shall be considered an agent of the United States.

      b.    The United States shall give Settling Parties notice of any claim for which the United States plans to seek indemnification pursuant to this ¶ 35, and shall consult with Settling Parties prior to settling such claim.

36.    Settling Parties covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Parties and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Parties shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Parties and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

37.    <u>Insurance</u>. No later than 15 days before commencing any on-site Work, Settling Parties or its contractors shall secure, and shall maintain until the first anniversary after the Remedial Action for OU 2 has been performed in accordance with this Consent Decree and the Performance Standards have been achieved, commercial general liability insurance with limits of $1 million per occurrence, automobile liability insurance with limits of $1 million per accident, and umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on

behalf of Settling Parties pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Parties shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Parties in furtherance of this Consent Decree. Prior to commencement of the Work, Settling Parties shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Parties shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Parties demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Parties need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Parties shall ensure that all submittals to EPA under this Paragraph identify the North Alcoa Site in East St. Louis, Illinois and the civil action number of this case.

## XI.     FORCE MAJEURE

38.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Parties, of any entity controlled by Settling Parties, or of Settling Parties' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Parties' best efforts to fulfill the obligation. The requirement that Settling Parties exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent

possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

39.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Parties intend or may intend to assert a claim of force majeure, Settling Parties shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Superfund & Emergency Management Division, EPA Region 5, within 24 hours of when Settling Parties first knew that the event might cause a delay. Within 10 days thereafter, Settling Parties shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Parties' rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Parties, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Parties shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Settling Parties shall be deemed to know of any circumstance of which Settling Parties, any entity controlled by Settling Parties, or Settling Parties' contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Parties from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 38 and whether Settling Parties have exercised their best efforts under ¶ 38, EPA may, in

its unreviewable discretion, excuse in writing Settling Parties' failure to submit timely notices under this Paragraph.

40.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Parties in writing of its decision. If EPA agrees that the delay is attributable to a force majeure, EPA will notify Settling Parties in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

41.     If Settling Parties elect to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Parties shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Parties complied with the requirements of ¶¶ 38 and 39. If Settling Parties carry this burden, the delay at issue shall be deemed not to be a violation by Settling Parties of the affected obligation of this Consent Decree identified to EPA and the Court.

42.     The failure by EPA to timely complete any obligation under the Consent Decree or under the SOW is not a violation of the Consent Decree, provided, however, that if such

failure prevents Settling Parties from meeting one or more deadlines in the SOW, Settling Parties may seek relief under this Section.

## XII.   DISPUTE RESOLUTION

43.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Parties that have not been disputed in accordance with this Section.

44.     A dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.

45.     Statements of Position.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, Settling Parties invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Parties. The Statement of Position shall specify Settling Parties' position as to whether formal dispute resolution should proceed under ¶ 46 (Record Review) or ¶ 47.

37

b.      Within 10 days after receipt of Settling Parties' Statement of Position, EPA will serve on Settling Parties its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under ¶ 46 (Record Review) or ¶ 47. Within seven days after receipt of EPA's Statement of Position, Settling Parties may submit a Reply.

c.      If there is disagreement between EPA and Settling Parties as to whether dispute resolution should proceed under ¶ 46 (Record Review) or ¶ 47, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if Settling Parties ultimately appeal to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in ¶¶ 46 and 47.

46.     <u>Record Review</u>. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Settling Parties shall not challenge, using the dispute resolution procedures under Section XII, or judicially, EPA's remedial action selection embodied in the OU 2 ROD.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.      The Director of the Superfund & Emergency Management Division, EPA Region 5, will issue a final administrative decision resolving the dispute based on the administrative record described in ¶ 46.a. This decision shall be binding upon Settling Parties, subject only to the right to seek judicial review pursuant to ¶ 46.c and 46.d.

c.      Any administrative decision made by EPA pursuant to ¶ 46.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Parties with the Court and served on all Parties within 20 days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Parties' motion.

d.      In proceedings on any dispute governed by this Paragraph, Settling Parties shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to ¶ 46.a.

47.      Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.     The Director of the Superfund & Emergency Management Division, EPA Region 5, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under ¶ 45. The Superfund Division Director's decision shall be binding on Settling Parties unless, within 20 days after receipt of the decision, Settling Parties file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Parties' motion.

b.     Notwithstanding ¶ L (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

48.     The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Parties under this Consent Decree, except as provided in ¶ 33 (Contesting Future Response Costs), as agreed by EPA, or as determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in ¶ 56. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Settling Parties do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIII (Stipulated Penalties).

## XIII.   STIPULATED PENALTIES

49.     Settling Parties shall be liable to the United States for stipulated penalties in the amounts set forth in ¶¶ 50, 51, and 52 for failure to comply with the obligations specified in ¶¶ 50.b, 51, and 52 unless excused under Section XI (Force Majeure). "Comply" as used in the previous sentence includes compliance by Settling Parties with all applicable requirements of this Consent Decree, within the deadlines established under this Consent Decree. If an initially submitted or resubmitted deliverable contains a material defect, and the deliverable is disapproved or modified by EPA under ¶ 5.6(a) (Initial Submissions) or 5.6(b) (Resubmissions) of the SOW due to such material defect, then the material defect shall constitute a lack of compliance for purposes of this Paragraph.

50.     <u>Stipulated Penalty Amounts – Payments, Financial Assurance, Major Deliverables, and Other Milestones</u>.

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance identified in ¶ 50.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $8,000 | 31st day and beyond |

b.      <u>Obligations</u>.

(1)     Payment of any amount due under Section IX (Payments for Response Costs).

(2)     Establishment and maintenance of financial assurance in accordance with Section VIII (Financial Assurance).

(3)     Establishment of an escrow account to hold any disputed Future Response Costs under ¶ 33 (Contesting Future Response Costs).

51.     <u>Stipulated Penalty Amounts – Other Deliverables</u>. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate deliverables pursuant to the Consent Decree other than those specified in ¶ 50.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $2,000 | 15th through 30th day |
| $5,000 | 31st day and beyond |

52.     In the event that EPA assumes performance of a portion or all of the Work pursuant to ¶ 66 (Work Takeover), Settling Parties shall be liable for a stipulated penalty in the amount of $15,000. Stipulated penalties under this Paragraph are in addition to the remedies available under ¶¶ 28 (Access to Financial Assurance) and 66 (Work Takeover).

53.     All penalties shall begin to accrue on the day the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under ¶ 5.6 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Parties of any deficiency; (b) with respect to a decision by the Director of the Superfund & Emergency Management Division, EPA Region 5, under ¶ 46.b or 47.a of Section XII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Parties' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this

Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

54.     Following EPA's determination that Settling Parties have failed to comply with a requirement of this Consent Decree, EPA may give Settling Parties written notification of the same and describe the noncompliance. EPA may send Settling Parties a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Parties of a violation.

55.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Parties' receipt from EPA of a demand for payment of the penalties, unless Settling Parties invoke the Dispute Resolution procedures under Section XII (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall be made at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID Number, the DJ Number, and the purpose of the payment. Settling Parties shall send to DOJ and EPA, in accordance with ¶ 89, a notice of this payment including these references.

56.     Penalties shall continue to accrue as provided in ¶ 53 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Parties shall pay all accrued penalties determined by the Court

to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in ¶ 56.c;

      c.      If the District Court's decision is appealed by any Party, Settling Parties shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Parties to the extent that they prevail.

57.      If Settling Parties fail to pay stipulated penalties when due, Settling Parties shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Parties have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to ¶ 56 until the date of payment; and (b) if Settling Parties fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under ¶ 55 until the date of payment. If Settling Parties fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

58.      The payment of penalties and Interest, if any, shall not alter in any way Settling Parties' obligation to complete the performance of the Work required under this Consent Decree.

59.      Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Parties' violation of this Consent Decree or of the statutes and

regulations upon which it is based, including, but not limited to, penalties pursuant to Section

122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek

civil penalties pursuant to Section 122(*1*) of CERCLA for any violation for which a stipulated

penalty is provided in this Consent Decree, except in the case of a willful violation of this

Consent Decree.

60.     Notwithstanding any other provision of this Section, the United States may, in its

unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to

this Consent Decree.

### XIV.   COVENANTS BY PLAINTIFF

61.     <u>Covenants for Settling Parties by United States</u>. Except as provided in ¶ 65

(General Reservations of Rights), the United States covenants not to sue or to take administrative

action against Settling Parties pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C.

§§ 9606 and 9607(a), for the Work, Past Response Costs, and Future Response Costs. These

covenants shall take effect upon the Effective Date. These covenants are conditioned upon the

satisfactory performance by Settling Parties of their obligations under this Consent Decree.

These covenants extend only to Settling Parties and do not extend to any other person.

62.     <u>United States' Pre-Certification Reservations</u>. Notwithstanding any other

provision of this Consent Decree, the United States reserves, and this Consent Decree is without

prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an

administrative order, seeking to compel Settling Parties to perform further response actions

relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to

Certification of RA Completion, (1) conditions at the Site, previously unknown to EPA, are

discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and

(b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the RA is not protective of human health or the environment.

63.    United States' Post-Certification Reservations. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Parties to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of RA Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the RA is not protective of human health or the environment.

64.    For purposes of ¶ 62 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the OU 2 ROD was signed and set forth in the OU 2 ROD for the Site and the administrative record supporting the OU 2 ROD. For purposes of ¶ 63 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of RA Completion and set forth in the OU 2 ROD, the administrative record supporting the OU 2 ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of RA Completion.

65.   <u>General Reservations of Rights</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Parties with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Parties with respect to:

a.   liability for failure by Settling Parties to meet a requirement of this Consent Decree;

b.   liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.   liability based on the ownership of the Site by Settling Parties when such ownership commences after signature of this Consent Decree by Settling Parties;

d.   liability based on the operation of the Site by Settling Parties when such operation commences after signature of this Consent Decree by Settling Parties and does not arise solely from Settling Parties' performance of the Work;

e.   liability based on Settling Parties' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the OU 2 ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Parties;

f.   liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.   criminal liability;

h.   liability for violations of federal or state law that occur during or after implementation of the Work;

i.      liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the OU 2 ROD, but that cannot be required pursuant to ¶ 13 (Modification of SOW or Related Deliverables);

j.      liability for additional operable units at the Site or the final response action; and

k.      liability for costs that the United States will incur regarding the Site but that are not within the definition of Future Response Costs.

66.   <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Parties: (1) have ceased implementation of any portion of the Work; (2) are seriously or repeatedly deficient or late in their performance of the Work; or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Parties. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Parties a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 10 day notice period specified in ¶ 66.a, Settling Parties have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Parties in writing (which writing may be electronic)

48

if EPA determines that implementation of a Work Takeover is warranted under this ¶ 66.b. Funding of Work Takeover costs is addressed under ¶ 28 (Access to Financial Assurance).

      c.     Settling Parties may invoke the procedures set forth in ¶ 46 (Record Review), to dispute EPA's implementation of a Work Takeover under ¶ 66.b. However, notwithstanding Settling Parties' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under ¶ 66.b until the earlier of (1) the date that Settling Parties remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with ¶ 46 (Record Review) requiring EPA to terminate such Work Takeover.

67.     Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XV.    COVENANTS BY SETTLING PARTIES

68.     <u>Covenants by Settling Parties</u>. Subject to the reservations in ¶ 70, Settling Parties covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs and this Consent Decree, including, but not limited to:

      a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

b.      any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Illinois Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

69.     Except as provided in ¶ 72 (Waiver of Claims by Settling Parties) and 80 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XIV (Covenants by Plaintiff), other than in ¶ 65.a (claims for failure to meet a requirement of the Consent Decree), 65.g (criminal liability), and 65.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Parties' claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

70.     Settling Parties reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Parties' plans, reports, other deliverables or activities.

71.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

72.     <u>Waiver of Claims by Settling Parties</u>.

        a.     Settling Parties agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person where the person's liability to Settling Parties with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

        b.     The waiver in ¶ 72.a shall not apply with respect to any defense, claim, or cause of action that a Settling Party may have against any person otherwise covered by such waiver if such person asserts a claim or cause of action relating to the Site against such Settling Party.

        c.     The waiver under ¶ 72.a shall not apply to any claim or cause of action against any person otherwise covered by such waiver if EPA determines that: (i) the

materials containing hazardous substances contributed to the Site by such person contributed significantly or could contribute significantly, either individually or in the aggregate, to the cost of the response action or natural resource restoration at the Site; or (ii) such person has failed to comply with any information request or administrative subpoena issued pursuant to Section 104(e) or 122(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e) or 9622(e)(3)(B), or Section 3007 of RCRA, 42 U.S.C. § 6927, or has impeded or is impeding, through action or inaction, the performance of a response action or natural resource restoration with respect to the Site; or if (iii) such person has been convicted of a criminal violation for the conduct to which the waiver would apply and that conviction has not been vitiated on appeal or otherwise.

73.   <u>Claims Against other Site Owners</u>. Settling Parties agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person where the person's liability to Settling Parties with respect to the Site is based solely on their status as a current owner of a property at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Party may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Party.

74.   Settling Parties agree not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

## XVI.   EFFECT OF SETTLEMENT; CONTRIBUTION

75.     Except as provided in ¶ 72 (Waiver of Claims by Settling Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section XV (Covenants by Settling Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2) and (3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

76.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which each Settling Party has, as of the Effective Date, resolved liability to the United States within the meaning of purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Party is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are the Work, Past Response Costs, and Future Response Costs.

77.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes

a judicially-approved settlement pursuant to which each Settling Party has, as of the Effective

Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of

CERCLA, 42 U.S.C. § 9613(f)(3)(B).

78.     Each Settling Party shall, with respect to any suit or claim brought by it for

matters related to this Consent Decree, notify the United States in writing no later than 60 days

prior to the initiation of such suit or claim.

79.     Each Settling Party shall, with respect to any suit or claim brought against it for

matters related to this Consent Decree, notify in writing the United States within 10 days after

service of the complaint on such Settling Party. In addition, each Settling Party shall notify the

United States within 10 days after service or receipt of any Motion for Summary Judgment and

within 10 days after receipt of any order from a court setting a case for trial.

80.     Res Judicata and Other Defenses. In any subsequent administrative or judicial

proceeding initiated by the United States for injunctive relief, recovery of response costs, or

other appropriate relief relating to the Site, Settling Parties shall not assert, and may not

maintain, any defense or claim based upon the principles of waiver, res judicata, collateral

estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the

claims raised by the United States in the subsequent proceeding were or should have been

brought in the instant case; provided, however, that nothing in this Paragraph affects the

enforceability of the covenants not to sue set forth in Section XIV (Covenants by Plaintiff).

## XVII.  ACCESS TO INFORMATION

81.     Settling Parties shall provide to EPA, upon request, copies of all records, reports,

documents, and other information (including records, reports, documents, and other information

in electronic form) (hereinafter referred to as "Records") within Settling Parties' possession or

control or that of their contractors or agents relating to activities at the Site or to the

implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of

custody records, manifests, trucking logs, receipts, reports, sample traffic routing,

correspondence, or other documents or information regarding the Work. Settling Parties shall

also make available to EPA, for purposes of investigation, information gathering, or testimony,

their employees, agents, or representatives with knowledge of relevant facts concerning the

performance of the Work.

     82.   <u>Privileged and Protected Claims</u>.

     a.   Settling Parties may assert that all or part of a Record requested by

Plaintiff is privileged or protected as provided under federal law, in lieu of providing the

Record, provided Settling Parties comply with ¶ 82.b, and except as provided in ¶ 82.c.

     b.   If Settling Parties assert a claim of privilege or protection, they shall

provide Plaintiff with the following information regarding such Record: its title; its date;

the name, title, affiliation (e.g., company or firm), and address of the author, of each

addressee, and of each recipient; a description of the Record's contents; and the privilege

or protection asserted. If a claim of privilege or protection applies only to a portion of a

Record, Settling Parties shall provide the Record to Plaintiff in redacted form to mask the

privileged or protected portion only. Settling Parties shall retain all Records that they

claim to be privileged or protected until Plaintiff has had a reasonable opportunity to

dispute the privilege or protection claim and any such dispute has been resolved in the

Settling Parties' favor.

     c.   Settling Parties may make no claim of privilege or protection regarding:

(1) any data regarding the Site, including, but not limited to, all sampling, analytical,

monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any Record that Settling Parties are required to create or generate pursuant to this Consent Decree.

83.     <u>Business Confidential Claims</u>. Settling Parties may assert that all or part of a Record provided to Plaintiff under this Section or Section XVIII (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Parties shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which Settling Parties assert business confidentiality claims. Records that Settling Parties claim to be confidential business information will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Parties that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Parties.

84.     If relevant to the proceeding, the Parties agree that validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.

85.     Notwithstanding any provision of this Consent Decree, Plaintiff retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XVIII.  RETENTION OF RECORDS

86.     Until 10 years after EPA's Certification of Work Completion under ¶ 3.13 (Certification of Work Completion) of the SOW, each Settling Party shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Parties who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each Settling Party must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Party (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

87.     At the conclusion of this record retention period, Settling Parties shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States or the State, and except as provided in ¶ 82 (Privileged and Protected Claims), Settling Parties shall deliver any such Records to EPA.

88.     Each Settling Party certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding

the Site since the notification of potential liability by the United States or the State and that it has

fully complied with any and all EPA and State requests for information regarding the Site

pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and

9622(e)(3)(B), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

## XIX.   NOTICES AND SUBMISSIONS

89.     All approvals, consents, deliverables, modifications, notices, notifications,

objections, proposals, reports, and requests specified in this Consent Decree must be in writing

unless otherwise specified. Whenever, under this Consent Decree, notice is required to be given,

or a report or other document is required to be sent, by one Party to another, it must be directed

to the person(s) specified below at the address(es) specified below. Any Party may change the

person and/or address applicable to it by providing notice of such change to all Parties. All

notices under this Section are effective upon receipt, unless otherwise specified. Notices required

to be sent to EPA, and not to the United States, should not be sent to the DOJ. Except as

otherwise provided, notice to a Party by email (if that option is provided below) or by regular

mail in accordance with this Section satisfies any notice requirement of the Consent Decree

regarding such Party.

|  |  |
|---|---|
| As to the United States: | Chief, Environmental Enforcement Section |
|  | Environment and Natural Resources Division |
|  | U.S. Department of Justice |
|  | P.O. Box 7611 |
|  | Washington, D.C. 20044-7611 |
|  | Re: DI # 90-11-3-10590/1 |

As to EPA:                          Director, Superfund & Emergency Management
                                    Division
                                    United States Environmental Protection
                                    Agency, Region 5
                                    77 West Jackson Boulevard, S-6J
                                    Chicago, Illinois 60604

and:                                Dion Novak, EPA Project Coordinator United
                                    States Environmental Protection Agency,
                                    Region 5
                                    77 West Jackson Boulevard, SR-6J
                                    Chicago, Illinois 60604

As to the Regional Financial        Michael Bednarz, Lead Accountant
Management Officer:                 Comptroller Branch
                                    Region 5
                                    77 West Jackson Boulevard, MC-10J
                                    Chicago, Illinois 60604

As to the State:                    Charlene Falco
                                    State Project Coordinator Federal Facilities
                                    Unit
                                    Federal Site Remediation Section Division of
                                    Remediation Management Bureau of Land
                                    Illinois EPA
                                    1021 North Grand Avenue East
                                    P.O. Box 19276
                                    Springfield, Illinois 62794-9276

As to Defendant Alcoa Corp.:        Alcoa Corporation
                                    Transformation
                                    201 Isabella St.
                                    Pittsburgh, Pennsylvania 15212
                                    Attn: Ronald M. Morosky

and

                                    Alcoa Corporation
                                    Legal Department
                                    201 Isabella St.
                                    Pittsburgh, Pennsylvania 15212
                                    Attn: Gregory Pfeifer

As to Defendant City of          City Manager
East Saint Louis, Illinois:         301 River Park Drive
East St. Louis, Illinois 62201

  and:                        Michael Wagner (project coordinator)
525 W. Main St., Ste 105
Belleville, Illinois  62220

As to Settling Party Howmet:      Legal Division
Howmet Aerospace Inc.
201 Isabella St.
Pittsburgh PA  15212

  and:                        Corporate Environmental Remediation
Howmet Aerospace Inc.
201 Isabella St.
Pittsburgh PA  15212

## XX.   RETENTION OF JURISDICTION

90.    This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII (Dispute Resolution).

## XXI.  APPENDICES

91.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the OU 2 ROD.

"Appendix B" is the SOW.

"Appendix C" is a map of the Site.

## XXII.   MODIFICATION

92.      Except as provided in ¶ 13 (Modification of SOW or Related Deliverables),

material modifications to this Consent Decree, including the SOW, shall be in writing, signed by

the United States and Settling Parties, and shall be effective upon approval by the Court. Except

as provided in ¶ 13, non-material modifications to this Consent Decree, including the SOW, shall

be in writing and shall be effective when signed by duly authorized representatives of the United

States and Settling Parties. A modification to the SOW shall be considered material if it

implements a ROD amendment that fundamentally alters the basic features of the selected

remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any

modification to the SOW, the United States will provide the State with a reasonable opportunity

to review and comment on the proposed modification.

93.      Nothing in this Consent Decree shall be deemed to alter the Court's power to

enforce, supervise, or approve modifications to this Consent Decree.

## XXIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

94.      This Consent Decree shall be lodged with the Court for at least 30 days for public

notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2),

and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if

the comments regarding the Consent Decree disclose facts or considerations that indicate that the

Consent Decree is inappropriate, improper, or inadequate. Settling Parties consent to the entry of

this Consent Decree without further notice.

95.      If for any reason the Court should decline to approve this Consent Decree in the

form presented, this agreement is voidable at the sole discretion of any Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties.

## XXIV.  SIGNATORIES/SERVICE

96.     Each undersigned representative of a Settling Party to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

97.     Each Settling Party agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Parties in writing that it no longer supports entry of the Consent Decree.

98.     Each Settling Party shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Parties agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Parties need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXV.  FINAL JUDGMENT

99.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

100.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Parties. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS_____DAY OF_____, 20___.


_____
United States District Judge

Signature page for RD/RA Consent Decree regarding the North Alcoa Superfund
Alternative Site, Operable Unit 2

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

  /s/ Michael J. Zoeller
MICHAEL J. ZOELLER
Senior Counsel
Environmental Enforcement Section  Environment
and Natural Resources Division  United States
Department of Justice
P.O. Box 7611
Washington D.C.  20044-7611

 STEVEN D. WEINHOEFT
 United States Attorney
 Southern District of Illinois

  /s/ Nathan E. Wyatt (with consent)
NATHAN E. WYATT
Chief, Civil Division
United States Attorney's Office
Southern District of Illinois
Nine Executive Dr.
Fairview Heights, IL  62208
(618) 628-3700
nathan.wyatt@usdoj.gov

Signature page for RD/RA Consent Decree regarding the North Alcoa Superfund
Alternative Site, Operable Unit 2

FOR THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY:

December 14, 2021

Digitally signed by
DOUGLAS BALLOTTI
Date: 2021.12.14
10:15:33 -06'00'

Date

DOUGLAS BALLOTTI

Director

Superfund & Emergency Management Division. Region 5

U.S. Environmental Protection Agency

77 W. Jackson Blvd.

Chicago, Illinois  60604

TAMARA
CARNOVSKY

Digitally signed by
TAMARA CARNOVSKY
Date: 2021.12.14
11:03:46 -06'00'

TAMARA CARNOVSKY

Associate Regional Counsel

Office of Regional Counsel, Region 5

U.S. Environmental Protection Agency

77 W. Jackson Blvd.

Chicago, Illinois  60604

Signature page for RD/RA Consent Decree regarding the North Alcoa Superfund
Alternative Site, Operable Unit 2

FOR ALCOA CORPORATION:

10 / 19 / 21

Date

JEFFREY D. HEETER
Executive Vice President, General Counsel and
Secretary
Alcoa Corporation
201 Isabella Street
Pittsburgh, PA 15212

10 / 19 / 21

Date

ROBERT S. BEAR
Vice President, Transformation
Alcoa Corporation
201 Isabella Street
Pittsburgh, PA 15212

66

Signature page for RD/RA Consent Decree regarding the North Alcoa Superfund Alternative Site, Operable Unit 2

FOR THE CITY OF EAST SAINT LOUIS, ILLINOIS:

10/9/21
Date

ROBERT EASTERN III
Mayor, East St. Louis, Illinois

12/9/21
Date

CARLOS MAYFIELD
City Manager, East St. Louis, Illinois

12/9/21
Date

DEBRA HAMILTON TIDWELL
City Clerk, East St. Louis, Illinois
301 River Park Drive
East St. Louis, IL 62201

12/9/21
Date

MICHAEL L. WAGNER
Corporate Counsel, City of East St. Louis, Illinois
Clayborne & Wagner, LLP
525 W. Main Street, Ste 105
Belleville, IL 62220
(618) 239-0187
mwagner@cswlawllp.com

Signature page for RD/RA Consent Decree regarding the North Alcoa Superfund Alternative Site, Operable Unit 2

FOR HOWMET AEROSPACE INC.:

10/29/2021
Date

Name: Neil Marchuk.

Title: EVP, CHRO.

Howmet Aerospace Inc.
201 Isabella Street
Pittsburgh, PA  15212

68